UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 18 CR 149-1 |
| | ) | |
| v. | ) | Judge Sharon Johnson Coleman |
| | ) | |
| MILLARD WILLIAMS, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

On July 14, 2021, a jury convicted defendant Millard Williams of five separate offenses, as discussed in detail below. Before the Court is Williams' motion for judgment of acquittal, and, in the alternative, motion for a new trial brought pursuant to Federal Rules of Criminal Procedure 29(c) and 33, respectively. For the following reasons, the Court denies Williams' post-trial motions.

**Background**

On February 21, 2017, Williams was arrested in the State of Georgia based on a federal criminal complaint and arrest warrant issued in case number 16-CR-371 in the Northern District of Illinois. Williams was detained in Georgia until March 2, 2017, at which time he was transferred to the Metropolitan Correctional Center ("MCC") in Chicago arriving on March 6, 2017.

At Williams' jury trial, the government presented postal records showing that two parcels were shipped from Hong Kong on February 17 and 20, 2017, to a salon in Atlanta, Georgia directed to Williams' co-conspirator Willie Alexander. Three days after the second package was shipped from Hong Kong, Williams made a recorded call from jail to Alexander telling him that he had sent Alexander two packages. On a February 25, 2017 recorded call, Williams and his co-defendant Roland Black discussed a shipment of narcotics to Black in Chicago. After Black and Williams discussed the drug transaction, Alexander received the packages from Hong Kong. Williams then

told Alexander in a recorded call to ship the narcotics to Black in Chicago under the name "Maria Gonzalez." Post office surveillance video showed Alexander shipping a package from an Atlanta post office on March 2. That same day, Alexander called Williams to confirm that he had mailed the package.

At trial, the government presented testimony as to the chain of custody of the narcotics. United States Postal Inspector Alex Lupiani testified that he intercepted a package shipped from Atlanta to "Maria Gonzalez" with the address of 1008 North Springfield in Chicago. Special Agent Mark Wasunyk testified that law enforcement officers opened the package pursuant to a search warrant and found two sealed packages of powder in a plastic bag. Forensic chemist Neele Shepherd testified that the two sealed packages contained 518.42 grams of furanyl fentanyl and 494.47 grams of a mixture of furanyl fentanyl. Drug Enforcement Administration Unit Chief Liquon Wong testified that the chemical structure of furanyl fentanyl is substantially similar to fentanyl.

While waiting for the package to arrive in Chicago, Williams continued to discuss the logistics of the drug transaction on numerous recorded calls, including informing Alexander and co-conspirator Michelle Jamison about the package's tracking information. Williams further instructed Jamison to text Black about the delivery. On March 8, after the package had failed to arrive at the North Springfield address, Williams told Black that they would have to split the losses if the package was missing. On other recorded calls, Williams discussed the late delivery with Jamison.

Law enforcement officials testified at trial about the delivery of the narcotics to 1008 North Springfield in Chicago on March 9, 2017. Specifically, Agent Tom Weingart testified that the furanyl fentanyl found in the shipped delivery was replaced with sham narcotics and that he brushed luminescent powder on the sham narcotics to see who would touch them. Agent Weingart also wired the box containing the sham narcotics to emit a signal when the box was opened. Agent

James Lacey testified that he acted like a mail carrier in an undercover capacity and delivered the package to 1008 North Springfield Avenue. He testified a woman who said she was "Maria Gonzalez" took the package.

At trial, the government presented helicopter surveillance footage showing that after "Maria Gonzalez" took the package, a man arrived at the North Springfield address, met with "Gonzalez," and went into the apartment with her. Two minutes later, law enforcement received the signal that the package had been opened. Officers then went to the front door of the three-flat apartment building at 1008 North Springfield. Text records show that two minutes after the package was delivered, Black called Jamison. Less than an hour later, Jamison called Williams stating, "they got it" to which Williams replied, "now I got a smile on my face."

Additional helicopter surveillance showed that thirty seconds after law enforcement arrived, the package of narcotics was thrown out the back of the three-flat on North Springfield. Surveillance video showed a man exiting the back door of the middle unit and fleeing up the back stairs. Agent Wasunyk testified that he arrested Black on the top floor and Agent Weingart testified that he performed a black light test on Black's hand and found the luminescent power that had been brushed on the package.

After the controlled delivery, Jamison told Williams on a recorded call that she could not reach Black by phone. When Williams learned that Black was arrested and in jail, he told Jamison that he would "never cooperate with them people" and that he would "never help them people out."

On July 14, 2021, the jury convicted Williams of the following offenses: (1) conspiracy to possess with intent to distribute and distribute 100 grams or more of a mixture and substance containing furanyl fentanyl, an analogue of fentanyl, in violation of 21 U.S.C. §§ 841(a)(1) and 846 (Count One); (2) possession with intent to distribute 100 grams or more of a mixture and substance containing furanyl fentanyl, an analogue of fentanyl, in violation of 21 U.S.C. § 841(a)(1) and 18

U.S.C. § 2 (Count Two); (3) using the United States mail in furtherance of the conspiracy charged in Count One, in violation of 21 U.S.C. § 843(b) and 18 U.S.C. § 2 (Count Three); and two counts of using a telephone in furtherance of the conspiracy charged in Count One, in violation of 21 U.S.C. § 843(b) (Counts Five and Six).

**Discussion**

*Motion for Judgment of Acquittal*

After a jury returns a guilty verdict, defendants seeking judgment of acquittal face an extremely high hurdle. *United States v. Vizcarra-Millan*, 15 F.4th 473, 506 (7th Cir. 2021). This is because when assessing Rule 29(c) motions, "courts view the evidence in the light most favorable to the government to determine whether any rational trier of fact could have found the essential elements of the charged offense beyond a reasonable doubt." *United States v. Wallace*, 991 F.3d 810, 812 (7th Cir. 2021). In doing so, courts do not re-weigh the evidence or second-guess credibility determinations and make all reasonable inferences in the government's favor. *United States v. Wallace*, 991 F.3d 810, 812 (7th Cir. 2021); *United States v. Ginsberg*, 971 F.3d 689, 695 (7th Cir. 2020).

Williams moves for judgment of acquittal under Rule 29(c) making the overly-broad argument that the government failed to sustain its burden beyond a reasonable doubt as to every element of every charge. Outside of citing the sufficiency of the evidence standard under *Jackson v. Virginia*, 443 U.S. 307 (1979), and its progeny, Williams' arguments supporting his motion for judgment of acquittal fail to cite supporting case law or any part of the trial record. "The Seventh Circuit has repeatedly clarified that underdeveloped and merely perfunctory arguments like this are waived." *United States v. Morales*, ___F.Supp.3d ___, 2021 WL 5299794, at *4 (N.D. Ill. 2021) (St. Eve, J.).

Viewing the evidence and all reasonable inferences in the government's favor, there was overwhelming trial evidence of Williams' guilt supporting the conspiracy charge in Count One.

4

Specifically, the government presented evidence that beginning in February 2017 and continuing into March 2017, a conspiracy existed to knowingly and intentionally distribute a controlled substance and that Williams knowingly became a conspiracy member with the intent to advance the conspiracy. In fact, the recorded calls presented at trial show Williams directed the conspiracy from his jail cell in Georgia and at the MCC. The underlying evidence includes the numerous recorded calls that were most often initiated by Williams to his co-conspirators Jamison and Alexander, along with his recorded calls to the purchaser Black. The government also presented text messages, Western Union documents, post office surveillance video, undercover officer video records, helicopter surveillance video, and trial testimony in support of Count One. Based on this evidence, the government proved Count One beyond a reasonable doubt.

Nevertheless, Williams argues that the government failed to present any evidence that he knew the package sent from Atlanta to Chicago contained a controlled substance, especially because he was incarcerated at the time the package was sent to Chicago. Evidence presented a trial belies Williams' argument, including that he was not in custody when he ordered the packages from Hong Kong and when the packages were shipped from Hong Kong to Georgia days before his arrest. In addition, the recorded calls Williams made to his co-conspirators and co-defendant Black support a reasonable inference that Williams was abundantly aware that he was setting up a kilogram-sized delivery of a controlled substance to Black in Chicago.

As to Count Two, possession with intent to distribute 100 grams or more of a controlled substance on February 27, 2017, Williams argues the government did not meet its burden in establishing that the offense occurred in the Northern District of Illinois. Williams specifically argues that the site of his alleged acts, elements of the crime, and locus of the criminal conduct occurred in Georgia. This argument concerns venue, an argument Williams made in one of his motions to dismiss the indictment.

As the Court explained in its July 2020 order denying Williams' Rule 12(b)(3) motion to dismiss Count Two based on improper venue, 21 U.S.C. § 841(a)(1) does not contain a specific venue provision, therefore, the general venue provision contained in 18 U.S.C. § 3237(a) governs the Court's analysis. Under this general provision, the Seventh Circuit has held "distribution and possession with intent to distribute are continuing crimes," and thus "venue is proper in any district where the crime began, continued or was completed." *United States v. Muhammad*, 502 F.3d 646, 653 (7th Cir. 2007); *see also United States v. Orona–Ibarra*, 831 F.3d 867, 872 (7th Cir. 2016) ("Many offenses touch more than one district."). Also, "to satisfy the terms of the continuing offense venue statute, it is not essential that the defendant ever have been physically present in the district in question, so long as the offense continued into the district." *Muhammad,* 502 F.3d at 653. After considering the trial evidence and based on the continuing nature of the offense, the Court concludes the government established by a preponderance of the evidence that venue was proper in the Northern District of Illinois because as early as February 23, 2017, Williams had the intent to have the narcotics delivered to Chicago to complete the drug transaction with Black. In sum, Williams intended that the effect of his actions was felt in the Northern District of Illinois. *Id.* at 655. Williams' argument as to Count Two is without merit.

Last, Williams does not articulate how the government failed to meet its burden as to Counts Three, Four, and Five. He has thus waived these arguments. *See White v. United States*, 8 F.4th 547, 552 (7th Cir. 2021).

*New Trial Motion*

In his Rule 33 motion for a new trial, Williams contends the Court erred by: (1) denying his motion to dismiss the indictment regarding whether furanyl fentanyl is an "analogue" of fentanyl for purposes the mandatory minimum prison term under 21 U.S.C. § 841(b)(1)(A)(iv); (2) denying Williams' motion to suppress the furanyl fentanyl seized from the "Maria Gonzalez" package

6

pursuant to a search warrant and failing to conduct an evidentiary hearing on the suppression motion; (3) denying his motion to dismiss Count Two of the indictment based on improper venue; (4) instructing the jury on certain issues; (5) granting the government's request to introduce co-conspirator statements pursuant to Federal Rule of Evidence 801(d)(2)(E); (6) denying Williams' motion for mistrial; and (7) denying Williams' motion for a directed finding at the close of the government's case. Williams also argues that the government failed to establish the chain of custody for the drugs.

Rule 33 authorizes district courts to "vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33. Granting a new trial is "reserved for only the most extreme cases," and courts "approach such motions with great caution." *United States v. Coscia*, 4 F.4th 454, 465 (7th Cir. 2021) (quotation marks and citations omitted). "The applicable standard under Rule 33 requires a new trial 'only if there is a reasonable possibility that the trial error had a prejudicial effect on the jury's verdict.'" *United States v. Maclin*, 915 F.3d 440, 444 (7th Cir. 2019) (citation omitted). "The ultimate inquiry is whether the defendant was deprived of a fair trial." *United States v. Friedman*, 971 F.3d 700, 713 (7th Cir. 2020) (citation omitted). District courts have considerable discretion in determining Rule 33 motions. *Id. at* 716.

The Court first turns to Williams' arguments about the Court's pretrial rulings where he relies on his earlier-filed briefs and rehashes his previously-made arguments instead of presenting new arguments addressing why the Court's rulings were erroneous. Williams' arguments relate to the Court's denial of his: (1) motion to dismiss the indictment regarding whether furanyl fentanyl is an "analogue" of fentanyl; (2) motion to suppress the furanyl fentanyl seized from the "Maria Gonzalez" package and request for a suppression hearing; and (3) motion to dismiss the indictment based on venue. The Court spent a considerable amount of time and judicial resources ruling on these motions starting in July 2020 and leading up to the jury trial in July 2021. In fact, the Court

7

addressed Williams' furanyl fentanyl arguments on multiple occasions, including in the context of jury instructions and in limine motions. Because Williams adds nothing new to his previous arguments, he has not given the Court any reason to reconsider these earlier rulings. Put differently, Williams' arguments made in the present motion do not meet the burden placed on defendants to provide adequate grounds for relief under Rule 33.

As to Williams' argument that the Court erred by not conducting an evidentiary hearing on his motion to suppress, it is well-established the evidentiary hearings are not required for suppression motions as a matter of course. *See United States v. Edgeworth*, 889 F.3d 350, 353 (7th Cir. 2018). Also, there were no disputed issues of material fact that would affect the outcome of the suppression motion, thus a hearing was unnecessary. *Id.* In the end, Williams' arguments in the present motion do not explain how the Court abused its discretion by not conducting a suppression motion hearing.

The Court next turns to Williams' arguments concerning jury instructions. "[T]o receive a new trial based on erroneous instructions, a defendant 'must show both that the instruction did not adequately state the law and that the error was prejudicial to [him] because the jury was likely to be confused or misled.'" *United States v. White,* 443 F.3d 582, 587 (7th Cir. 2006) (citation omitted); *see also United States v. Anzaldi*, 800 F.3d 872, 880 (7th Cir. 2015). Williams specifically challenges the following jury instructions: (1) the lack of a venue instruction; (2) the definition of analogue of fentanyl instruction; (3) the sham narcotics instructions; (4) the conspiracy jury instruction; and (5) the non-pattern instructions proposed by the government.

Williams first asserts that the Court erred by not instructing the jury as to venue. As discussed, the Court concluded that the government had established proper venue in the Northern District of Illinois under *United States v. Muhammad*, 502 F.3d 646 (7th Cir. 2007). Based on the trial record, Williams did not "make venue a serious issue" for the jury to decide. *Id.* at 656. In other

8

words, even though Williams objected to venue, it was not a question of fact for the jury because he did not show a genuine issue of material fact concerning venue in the first instance. *Id.* Meanwhile, Williams continues to ignore that distribution and possession with intent to distribute are continuing are crimes, therefore, venue is proper in any district where the crime began, continued, or was completed. There is ample evidence in the record that this continuing crime partially occurred and was completed in Chicago. Under the circumstances, there was no error.

Next, Williams argues that the Court erred in giving the government's instruction defining the term "analogue of fentanyl" as "any substance that has a chemical structure that is substantially similar to the chemical structure of fentanyl." The government based its instruction, in part, on United States Sentencing Guidelines Section 2D1.1, Note (J), which states in relevant part that "fentanyl analogue, for the purposes of this guideline, means any substance (including any salt, isomer, or salt of isomer thereof), whether a controlled substance or not, that has a chemical structure that is similar to fentanyl." In his motion for a new trial, Williams does not address this basis, or any other basis, as discussed in the Court's several rulings on the issue of furanyl fentanyl, including the denial of Williams' motion to dismiss Counts One, Two, and Four of the indictment. Without more, Williams' rehashed arguments do not establish that this instruction was improper.

Also, Williams challenges the Court's jury instruction concerning sham narcotics based on the Seventh Circuit Pattern Criminal Instruction 3.19. This instruction specifically stated: "You have heard evidence obtained from the government's use of a delivery of sham narcotics by an undercover law enforcement agent. The government is permitted to use this investigative technique. You should consider evidence obtained this way together with and in the same way you consider the other evidence." As the trial evidence indicates, the intercepted furanyl fentanyl found in the shipped delivery was replaced with sham narcotics. Williams argues that this jury instruction was unnecessary because he did not raise the issue of the agents substituting the drugs in the intercepted

package. During trial, however, defense counsel repeatedly questioned the handling of the "Maria Gonzalez" package, including the chain of custody for the package and the undercover techniques used. Accordingly, the Court's instruction was proper based on the evidence that the "Maria Gonzalez" package was filled with sham narcotics.

Williams takes issue with another jury instruction related to the sham narcotics. The instruction stated: "A conspiracy to possess or distribute a controlled substance can exist even where there are no controlled substances to be had." The government derived this jury instruction from cases involving attempted possession with intent to distribute in the context of sham narcotics. Although Williams was not charged with attempted possession with intent to distribute, the evidence in the record supports the instruction in the context of the sham narcotics that the agents used once they intercepted the actual controlled substance. At issue is Williams' subjective belief that actual controlled substances were involved, which was established at trial. Further, the Court also instructed the jury that they had to find Williams "knowingly or intentionally possessed with the intent to distribute or to distribute a controlled substance." Viewing the jury instructions as a whole, these instructions are a correct statement of law. *See Ernst v. City of Chicago,* 837 F.3d 788, 794 (7th Cir. 2016) ("District courts have substantial discretion in how to precisely word jury instructions, provided that the final result, read as a whole, is a complete and correct statement of the law.").

Moreover, Williams asserts that the government's conspiracy instruction, based on the Seventh Circuit Criminal Pattern 5.10, was improper because it allowed the jury to consider the acts and words of co-defendant Black, who was not charged in the conspiracy. Specifically, Williams takes issue with the last paragraph of the instruction:

> In deciding whether the defendant joined the conspiracy, you must base your decision only on what the defendant did or said. To determine what the defendant did or said, you may consider the defendant's own words or acts. You may also use the words or acts of other persons to help you decide what the defendant did or said.

10

Not only do courts presume that the Seventh Circuit Pattern Criminal Jury Instructions correctly state the law, *United States v. Marr,* 760 F.3d 733, 744 (7th Cir. 2014), Williams' argument has no legal basis, namely, that the jury cannot consider the statements of non-conspirators. Also important, Williams does not articulate why the instruction confused or mislead the jury. Without more, this argument has no merit.

Williams also challenges "numerous non-pattern jury instructions submitted by the government and allowed by the Court." He then argues the Court erred in denying his request for certain jury instructions and overruling his objections "as more fully set forth in the trial transcripts and pleadings." Williams does not mention how these jury instructions prejudiced him by confusing or misleading the jury. As above, Williams' bare-boned argument is waived. *See White*, 8 F.4th at 552.

In addition, Williams moves for a new trial based on the Court's ruling on the government's *Santiago* proffer. To give context, the government filed an 84-page motion in limine under Rule 801(d)(2)(E) seeking admission of forty-four recorded clips, numerous text messages, and other co-conspirator statements. In response, Williams opposed the admission of every statement detailed in the government's *Santiago* proffer. Here, Williams contends that he is incorporating by reference all of his objections that he set forth in his thirty-five page response brief to the government's *Santiago* proffer. Williams presents a two sentence argument that does not explain how the Court erred when making its rulings, and the Court is not obligated to research and construct Williams' legal arguments for him. *See Castelino v. Rose-Hulman Inst. of Tech.*, 999 F.3d 1031, 1036 (7th Cir. 2021). The Court denies this aspect of Williams' Rule 33 motion.

Next, Williams maintains that the Court erred in denying his motion for a mistrial arguing that he was unduly prejudiced because the jury knew he was in custody on an unrelated matter. Williams' counsel made the decision to front the issue of Williams' incarceration in opening

11

statements and then presented the defense that Williams did not know about the contents of the packages because he was incarcerated during the relevant time period. Any prejudice that this or other evidence of Williams' incarceration was ameliorated by the Court's instruction to the jury that they could not consider or speculate why Williams was in custody. *See United States v. Marchan,* 935 F.3d 540, 546-47 (7th Cir. 2019) ("Absent a showing to the contrary, this Court presumes that the jury limited its consideration of testimony in accordance with the trial court's instruction.") (citation omitted).

Williams further contends that the government did not establish the requisite chain of custody for the drugs. At trial, Postal Inspector Lupiani testified that he intercepted the "Maria Gonzalez" package and explained how he handed it over to Special Agent Wasunyk. Agent Wasunyk testified that he received the package and searched the contents, after which he provided the drugs to chemist Nelle Shephard, who testified that the drugs were furanyl fentanyl and a mixture of furanyl fentanyl. Nonetheless, Williams argues that the chain of custody was flawed because the custody receipts were dated two days after Postal Inspector Lupiani intercepted the "Maria Gonzalez" package and that Agent Wasunyk incorrectly filled out part of one of the receipts.

"A chain of custody need not be perfect." *United States v. Godinez,* 7 F.4th 628, 636 (7th Cir. 2021). Instead, the government must show that it took reasonable precautions to preserve the condition of the evidence, which was done here. *See United States v. Dewitt*, 943 F.3d 1092, 1098 (7th Cir. 2019). Also, when evidence is in police custody, a presumption of regularity applies absent evidence of tampering. *Godinez,* 7 F.4th at 636. Williams' assertions concern a mistake on the paperwork and the procedure of when the paperwork was initiated. Because there is no evidence that someone tampered with the evidence, the presumption of regularity applies under the circumstances. Accordingly, Williams' chain of custody argument is without merit.

Williams next challenges the Court's denial of his motion for a directed finding at the close

of the government's case. He specifically argues that the government's evidence was insufficient to sustain the burden of proof on all counts, including the venue requirement of Count Two. As discussed, the government fulfilled its burden of presenting sufficient evidence under *Jackson v. Virginia,* 443 U.S. 307, 319 (1979) ("after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.") (emphasis in original). Moreover, Williams does not substantiate his argument with citations to the record or legal authority nor does he develop his arguments. The Court denies Williams' motion for a new trial in this respect.

Last, Williams asserts that the cumulative effect of the variety of errors at trial requires a new trial and joins his co-defendant Roland Black's arguments made both pre- and post-trial "where appropriate." Without more, Williams has waived this claim. Equally important, Williams has failed to demonstrate that these unidentified errors had a prejudicial effect upon the jury's verdict. *See Maclin*, 915 F.3d at 444.

The Court, in its discretion, denies Williams' Rule 33 motion for a new trial.

**Conclusion**

For these reasons, the Court denies defendant's Rule 29(c) motion for judgment of acquittal and Rule 33 motion for a new trial [361].

IT IS SO ORDERED.

                                                                                                         _____
                                                                                                         SHARON JOHNSON COLEMAN
                                                                                                         United States District Court Judge

DATED: 4/18/2022